NOTICE

Decision filed 07/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250397-U

NO. 5-25-0397

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Crawford County. |
| | ) | |
| v. | ) | No. 23-CF-21 |
| | ) | |
| LISA L. McCOY, | ) | Honorable |
| | ) | Christoper L. Weber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices McHaney and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant is entitled to remand for (1) a preliminary *Krankel* inquiry and (2) the opportunity to file a motion pursuant to Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024).

¶ 2    This direct appeal arises from the sentencing of defendant, Lisa L. McCoy, following the revocation of her probation after her plea of guilty in this case. For the reasons that follow, we remand for a preliminary *Krankel* inquiry, and for defendant to have the opportunity to file a motion pursuant to Illinois Supreme Court Rule 472 (eff. Feb. 1, 2024).

¶ 3                                    I. BACKGROUND

¶ 4    On February 21, 2023, defendant was charged, by information, with one count of unlawful possession of methamphetamine, a Class 3 felony (count I), and one count of criminal trespass to real property, a Class B misdemeanor (count II). Count I alleged that on or about January 31, 2023,

1

defendant committed unlawful possession of methamphetamine, in that she "knowingly possessed less than 5 grams of [m]ethamphetamine." Count II alleged that on or about January 31, 2023, defendant committed criminal trespass to real property, in that she "knowingly and without authority entered [the Walmart store in Robinson] after receiving, prior to the entry, notice from the owner that the entry is forbidden."

¶ 5 At the outset of a hearing held on May 24, 2023, the circuit court stated that defendant had filed an application for waiver of criminal court assessments, the court had reviewed the application, and the court would enter an order approving the waiver requested in the application. The circuit court asked the State to proceed, and the State announced the terms of a guilty plea agreement. Defendant would enter a plea of guilty to count I, in exchange for count II being dismissed, and defendant receiving "First Offender Probation" for a period of 24 months. The State added that "[a]ll of the standard terms of felony probation" would apply, "including having to complete 30 hours of public service work and undergo an alcohol and drug assessment by a licensed agency and complete any recommended counseling."

¶ 6 The State continued that defendant would "pay a fine of $500," would "be assessed a $250 DNA fee" that would be waived, and would "pay probation fees of $600 and $10 Crime Stopper's fee." The State added that defendant's bond would "be applied," and defendant would "also receive $30 credit for two days served[,] for $60," which meant defendant would "end up owing a balance of $824 after her court costs [were] waived." The State further added that "because it is First Offender Probation, if she successfully complies with all the terms, the Court will enter a judgment dismissing the case."

¶ 7 Defendant's counsel agreed that the foregoing terms were the terms of the plea agreement. Defendant's counsel also waived the preparation of a presentence investigation report (PSI). The

2

State provided a factual basis for the plea agreement, to which defendant's counsel responded, "So stipulated." The circuit court inquired about defendant's criminal history, to which the State responded that defendant had "[n]o previous felonies."

¶ 8 When asked, defendant stated that she had fully discussed her case with her attorney and that she was satisfied with her attorney's representation. After defendant stated that she did not have any questions about the plea agreement she was entering, the circuit court admonished defendant as to the charges and potential penalties she faced, and the rights she was giving up by pleading guilty. The circuit court further questioned defendant to ensure defendant's plea was defendant's "own free and voluntary act"; that defendant was not forced, threatened, or coerced into pleading guilty; and that defendant was not promised anything other than the previously stated terms of the agreement. Thereafter, the circuit court accepted the plea agreement and sentenced defendant in accordance with the terms of the agreement.

¶ 9 The circuit court recounted the financial terms of the agreement, stating that (1) defendant was assessed a fine of $500; (2) a felony drug offense criminal assessment of $2,215 was assessed but was waived in full; (3) a DNA analysis fee of $250 was assessed but was waived in full; (4) probation fees totaling $600 were assessed, as was a $10 Crime Stoppers fee; and (5) defendant would receive credit for two days served in the county jail at the rate of $30 per day. The circuit court reiterated that "[a]fter application of bond, there is a balance due of $824." The circuit court also admonished defendant of her appeal rights.

¶ 10 On October 22, 2024, the State filed a "Petition Charging Violation Of Conditions Of Probation," in which it alleged that defendant (1) failed to report as directed for probation appointments, (2) refused, on October 9, 2024, to submit to drug and alcohol testing, (3) failed to

complete "any public service work," and (4) failed to complete a drug and alcohol assessment. The petition alleged that, as a result, defendant was "in violation of her probation."

¶ 11　On December 31, 2024, the State filed an amended petition in which it alleged that, in addition to the allegations in the original petition, (1) "[o]n October 23, 2024, [defendant] tested positive for methamphetamine, amphetamine, marijuana, benzodiazepine, and buprenorphine"; and (2) defendant "did obtain a drug and alcohol assessment after the initial petition was filed, however, on December 19, 2024, the probation office received a letter from Lawrence County Health Department that [defendant's] chart was being closed unsuccessfully due to non-compliance."

¶ 12　On March 7, 2025, a hearing was held on the amended petition, at which defendant was represented by counsel. Olivia Lingafelter testified that she was a probation officer for Crawford County. She testified that she became responsible for defendant's case in September of 2024, and that previously defendant's case had been handled by Mary Miller. Because defendant "initially scored out as a low-risk offender," the case was also handled by an administrative assistant. Lingafelter testified that defendant missed appointments and that when defendant appeared at an appointment on October 9, 2024, defendant refused to take a drug test. She testified that defendant reported to an appointment on October 23, 2024, at which she took a drug test that returned positive results for methamphetamine, amphetamine, marijuana, benzodiazepine, and buprenorphine. She testified that she asked defendant to bring in any prescriptions she had, but that as of the date of the hearing, defendant "still refused to bring in any prescriptions, medication bottles, anything like that to be verified."

¶ 13　Lingafelter testified that, to her knowledge, defendant had not completed her required public service work. She testified that defendant "did go to" a drug and alcohol assessment, but

4

that defendant "was unsuccessfully discharged December 19, 2024, due to noncompliance." She testified that defendant failed to communicate with the health department, and did not "respond to phone calls for over 30 days," so the department "had to close her out." Lingafelter testified that she was told that defendant "was very argumentative," and defendant "stated she did not think she needed counseling and would like a second opinion." She testified that defendant stated that in February of 2025, she arranged a drug and alcohol assessment with the Jasper County Health Department, but was on a waiting list and had not completed the assessment. On cross-examination, Lingafelter testified that defendant had "made all of her appointments with" Lingafelter since September of 2024, except that defendant failed to report for a drug test on January 29, 2025. She agreed that defendant had an appointment with Lingafelter "next week," and that defendant could bring "documentation and her prescriptions and community service" to that appointment.

¶ 14    Following Lingafelter's testimony, the State rested. The defense called defendant as its sole witness. With regard to the State's assertion that she "missed appointments," defendant testified that "could be correct," because she had "short-term memory loss" following "a brain bleed" after a car accident in November of 2023. She testified that she did not receive notice of some appointments, because after the accident, she stayed at times with her mother, and at times with her husband, and her mail did not always reach her. She testified that her short-term memory was "still whacked out" from the accident.

¶ 15    With regard to her alleged refusal to take a drug test on October 9, 2024, defendant testified that she attended the appointment, but she had urinated just before leaving her house, and when she got to the appointment, she "couldn't go." She testified that she could not remain at the appointment because she had a commitment to take her elderly mother to a doctor's appointment.

5

With regard to the positive drug test on October 23, 2024, defendant testified, "I had been out with a friend, and I had partied with a friend, and she is no longer my friend." She testified, "that was wrong," and that "whatever I smoked with her was laced with stuff."

¶ 16    With regard to her public service work, defendant testified that she had completed 16 of her required 30 hours, and would provide documentation of the hours at her next probation appointment. With regard to a drug and alcohol assessment, defendant testified that she was evaluated at the Lawrence County Health Department and "was supposed to *** do online counseling *** once a week." She testified that the counselor was ill with the flu and unavailable "both times" she attempted to sign on. She later became ill with the flu as well and missed her follow-up appointment in person, which led to her being terminated. Defendant testified that she "attempted to reengage in counseling," but was told it would take 90 days, and that "it might be quicker *** to try to sign up at Jasper County," which she did. She testified that she was on a waiting list and believed she would be able to begin the program in "three more weeks." She testified that she had been making payments on her "fines and court costs," and that because she had not "worked enough hours" recently, she planned on paying them off when she got her income tax refund.

¶ 17    Following argument from the parties, the circuit court found that the State had "met its burden with regard to [defendant's] probation violations, specifically, refusal of drug tests, testing positive for methamphetamine and other prohibited substances, no proof of completion of any public service work, and her not being in compliance with counseling." The court set a sentencing hearing for April 11, 2025. The court also entered a written order for a PSI. The PSI was filed on March 31, 2025.

¶ 18    At the April 11, 2025, sentencing hearing, the circuit court asked the parties if they had been given a chance to review the PSI. Defendant's counsel stated that she had, and that she had no objection to the PSI being admitted into evidence, but that she wanted to ensure the circuit court had seen defendant's "handwritten attached statement." The circuit court stated that it had not seen the statement, which the court attributed to a recent change in policy regarding *pro se* correspondence from defendants. Defendant's counsel asked the circuit court to consider the statement. The court then admitted the PSI into evidence, noting that it did not contain "those statements," which the court stated "can be added to the record later today."

¶ 19    The State presented the testimony of Morgan Kelly, a Crawford County probation officer. Kelly testified that since the March 7, 2025, hearing, defendant had met with Kelly and completed an interview, but had "failed to report for a drug screen this past Wednesday." Kelly testified that defendant had "just provided us with a copy of her public service work completion today." On cross-examination, Kelly agreed that defendant's public service work was "now completed."

¶ 20    The defense presented the testimony of Beverly Dart, who testified that she was defendant's mother. Dart testified that she was 81 years old and that she relied upon defendant to help take care of her. She testified that following defendant's car accident, defendant had problems with her short-term memory that had "not improved." She testified to defendant's physical and mental health struggles.

¶ 21    In argument, the State asked for a sentence of two years' imprisonment. The State added that it was "not asking for any additional fine." Defense counsel argued that defendant's car accident, which happened while she was on probation, caused many of the compliance problems in this case, and that defendant was "really trying" to comply. Defendant's counsel argued that despite some early problems, defendant now had "completed all her public service work," was

7

"engaging in counseling," and had accrued "a substantial period of compliance of probation since October [of 2024,] which would be a good five, six months now of compliance." Counsel asked the circuit court to give defendant "another opportunity" at probation, and to consider factors in mitigation. Counsel thereafter stated she "would also ask the court to take into consideration [defendant's] written statement she would like the court to read."

¶ 22    After ensuring the State did not object, the circuit court admitted defendant's statement into evidence as Defendant's Exhibit 1, and stated that it had considered the statement. The circuit court did not comment further on the contents of Defendant's Exhibit 1. Because it is directly relevant to this appeal, we note that the exhibit is mostly a narrative of defendant's experiences with the probation office, her car accident, and the complications that followed, and that she believed impacted her ability to comply with probation, as well as other issues that she stated impacted her ability to comply. Near the end of the handwritten statement, defendant stated that she believed she was "a productive member of society," that this was her "first time in trouble," and that she was "still shocked that [her] public defender did not defend [her] at all."

¶ 23    Defendant offered a verbal statement in allocution that was in many ways similar to her handwritten statement, although the verbal statement did not mention her counsel at all. Thereafter, the circuit court stated that it had considered the PSI, the witness testimony, the "written and verbal" statements of defendant, and the arguments of counsel. The circuit court discussed factors in mitigation, and in aggravation, and sentenced defendant "to two years [of] probation." The circuit court stated that defendant would "have to pay additional probation fees." The court added, "I assume that's 22 months, although I'll let counsel discuss that because her term should have been about up. There will be no additional fines, costs or assessments other than those probation fees." The court further added that it also was "sentencing defendant to 20 consecutive weekends

8

in the county jail," which would allow defendant to work, and to help care for her mother, "five of seven days a week."

¶ 24 Also on April 11, 2025, the circuit court entered a written financial sentencing order. The order indicated that defendant was responsible for a probation fee of $25 per month, for 22 months, for a total probation fee amount of $550, and a total balance due of $550. This timely appeal followed.

¶ 25                              II. ANALYSIS

¶ 26 On appeal, defendant contends this court must remand to the circuit court for (1) a preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into defendant's claim, in her handwritten correspondence, that she was "still shocked that [her] public defender did not defend [her] at all," and (2) defendant to be given the opportunity in the circuit court "to file a motion pursuant to Illinois Supreme Court Rule 472 for a correct calculation of the amount she owes in fines." With regard to defendant's first contention, the State has filed a confession of error, in which the State agrees with defendant that her handwritten assertion that she was "still shocked that [her] public defender did not defend [her] at all," was sufficient to trigger a preliminary *Krankel* inquiry. The State notes that under longstanding Illinois precedent, a defendant may bring a *pro se* claim of ineffective assistance of counsel to the circuit court's attention orally, or in writing, and is not required to provide a factual basis for the claim. See, *e.g.*, *People v. Bates*, 2019 IL 124143, ¶ 15.

¶ 27 Once the claim is raised, the circuit court examines the factual basis of the claim. *People v. Roddis*, 2020 IL 124352, ¶ 35. If the circuit court thereafter determines that the claim lacks merit or pertains only to matters of trial strategy, then the circuit court need not appoint new counsel and may deny the defendant's claim. *Id.* If, on the other hand, the *pro se* allegations show possible

9

neglect of the case, new counsel should be appointed. *Id.* In this case, we agree with the parties that defendant's assertion that she was "still shocked that [her] public defender did not defend [her] at all," was sufficient to trigger a preliminary *Krankel* inquiry, and that the circuit court erred when it did not conduct such an inquiry. Accordingly, we remand for a preliminary *Krankel* inquiry. See, *e.g.*, *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 22 (proper remedy when circuit court fails to conduct an adequate preliminary inquiry into defendant's posttrial claims of ineffective assistance of counsel is remand to allow the court to make that inquiry).

¶ 28 With regard to her second contention on appeal, defendant contends that it appears from the documents in the common law record that she "is responsible for the $550 in probation fees ordered on April 11, 2025, and the previously ordered $600 in probation fees, without credit for the fines she paid in accordance to the now vacated May 24, 2023, financial sentencing order." Defendant contends this is erroneous "because when a court revokes a defendant's probation, an entirely new sentence is imposed," which means that the "defendant is no longer subject to the original conditions of probation, including any monetary assessments." Defendant contends that although she would "be obligated to pay the fines and fees in question if the circuit court reimposed them at sentencing upon revocation of probation," in this case the circuit court "specifically stated, '[t]here will be no additional fines, costs or assessments other than those probation fees.' " She therefore seeks a remand "to file a motion pursuant to Illinois Supreme Court Rule 472 in order to correct the calculation of [her] fines, fees, assessments, and costs."

¶ 29 The State responds by contending that "the circuit clerk's calculation of defendant's financial sentence is in accord with the trial court's sentence, so remand is not necessary." The State first posits that defendant's claim is forfeited, because her updated financial obligations were filed in the record "prior to the 30-day time limit for defendant to have filed a motion to reconsider

10

sentence," and because she never filed such a motion. With regard to the merits of defendant's claim, the State argues that the circuit court's statements—that defendant would "have to pay additional probation fees," and that "[t]here will be no additional fines, costs or assessments other than those probation fees"—expressed the circuit court's intention "that the new probation fees would be in addition to, or joined with, those outstanding from defendant's original sentence of probation."

¶ 30    The State argues that the circuit court's language meant that "defendant would have to pay more probation fees because she was receiving more probation," and that such a ruling was reasonable and was consistent with the new financial sentencing order, which imposed additional probation fees for only 22 months—2 months less than the full term of defendant's new probation sentence—because defendant was assessed costs for 24 months as part of her original sentence, but served only 22 months before her new term of probation was imposed, which left her with a credit for 2 months that were assessed but not served. The State adds that it believes "defendant's interpretation of the [circuit] court's sentencing order would create an absurdity: that, despite having supervised defendant on probation for 22 months as a result of her original sentence, the probation department was not entitled to the fees for their services during that time period." The State further adds that the circuit court's "use of the word 'additional' when referring to defendant's financial obligations," meant that defendant's new probation sentence was "to also include the previously imposed fines, fees, assessments, and probation fees from her original probation sentence." The State posits that, accordingly, "it is unnecessary to remand this case for purposes of allowing defendant to file a Rule 472 motion in the [circuit] court when the record clearly establishes no error exists from which she can seek a remedy."

11

¶ 31 In her reply brief, defendant contends forfeiture does not apply in this case, because the plain language of Illinois Supreme Court Rule 472(e) (eff. Feb. 1, 2024) states that "[i]n all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Defendant also disputes the State's assertion that the circuit court's intent is clear from its order, pointing out that the circuit court never made a specific reference to the original sentencing order. Defendant adds that because the circuit court specifically stated that there would be no additional fines, costs, or assessments other than the new probation fees, the circuit court "indicated that it intended for [defendant] to not pay any additional fees, other than the specifically imposed probation fees," which means that the circuit "court explicitly did not reimpose the fines, fees, and assessments at resentencing."

¶ 32 We agree with defendant that Rule 472 precludes forfeiture in this case. In fact, Rule 472 *requires* that we remand to the circuit court to allow defendant to file a motion pursuant to the rule. See, *e.g.*, *People v. Williams*, 2020 IL App (1st) 163417, ¶¶ 93-94 (holding Rule 472 requires remand and recognizing prior cases holding same).

¶ 33                                III. CONCLUSION

¶ 34 For the foregoing reasons, we remand for a preliminary *Krankel* inquiry, and to allow defendant to file her Rule 472 motion.


¶ 35 Cause remanded.